IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE JEAN ANDERSON HIERARCHY       :
OF AGENTS and JEAN ANDERSON       :
                                  :        CIVIL ACTION
        v.                        :        NO. 97-CV-5175
                                  :
SURETY LIFE INSURANCE CO.         :

**MEMORANDUM & ORDER**

**SURRICK, J.**                                    **JANUARY 8, 2007**

        Presently before the Court is the Motion Of Defendant Surety Life Insurance Company

To Preclude Plaintiffs' Expert For Plaintiffs' Failure To Comply With Scheduling Order (Doc.

No. 54).  For the following reasons, Defendant's Motion will be Denied.

**I.      BACKGROUND**

        On August 13, 1997, Plaintiffs Jean Anderson and the Jean Anderson Hierarchy of

Agents filed a Complaint against Surety Life Insurance Company ("Surety"), alleging the

following facts in support of a series of claims arising out of the termination of her two services

contracts with Surety.  (Doc. No. 1.)[1]  In 1990, Jean Anderson and her husband, Walter, entered

into personal services contracts with Surety for the sale of their insurance products.  (Doc. No. 9

¶¶ 9-10.)  In May 1990, Surety hired Walter Anderson as their regional director for the

Pennsylvania and New Jersey markets.  (*Id.* ¶ 9.)  On June 12, 1990, Surety entered into an

Executive Sales Director Contract ("ESD Contract"), hiring Jean Anderson to serve as the

_____

        [1] On April 24, 1995, Plaintiffs filed a First Amended Complaint.  (Doc. No. 8.)  On May
19, 1998, a Second Amended Complaint was filed.  (Doc. No. 9.)

Executive Sales Director ("ESD") for Surety's Pennsylvania and New Jersey markets.[2]  (*Id.* ¶ 10.)

Under the ESD Contract, Jean Anderson was entitled to receive income through Surety's "dual compensation" system, which allowed her to earn both individual and override commissions.[3]  (*Id.*)  Over the next six years, Jean Anderson spent considerable time and effort building up the Surety office through various marketing techniques.  (*Id.* ¶ 11.)  By August 1996, Anderson had successfully recruited approximately 428 agents for the office.  (*Id.*) Throughout her time as an ESD and agent for Surety, Anderson was repeatedly recognized as a top-producing agent.  (*Id.*)  She was named ESD of the year in 1992 and was named to the Surety executive council on several occasions.  (*Id.* ¶ 13.)   According to calculations derived from Surety's own software program, Jean Anderson stood to earn in excess of $25,000,000 in lifetime compensation based on her production over this six year period.  (*Id.* ¶ 12.)

Despite her success, Surety refused to pay Jean Anderson certain bonuses owed to her under the ESD Contract and paid them to Walter Anderson instead.  (*Id.* ¶ 14.)  Surety also reduced Jean Anderson's individual and override commissions, because her husband was an ESD regional director.  (*Id.*)  On August 26, 1996, Surety terminated Walter Anderson's contract after he made a series of complaints about problems with certain Surety products.  (*Id.* ¶ 16.)  Two days later, Surety terminated Jean Anderson's contract without notice and rescinded her

---

[2] On October 10, 1995, Jean Anderson also signed an Agent Sales Contract with Surety. (*Id.* ¶ 16.)

[3] Under Surety's dual compensation system, a regional agency like that created by Jean Anderson would appoint agents.  ESD's would earn commissions based upon their individual sales, as well as override commissions based upon the volume of sales produced by the agency.

invitation to attend the annual company retreat for top-producing agents.  (*Id.* ¶¶ 19-20.)

On August 13, 1997, Plaintiffs filed this action.  (Doc. No. 1.)  Discovery in this matter concluded on September 29, 1999, having been extended three different times upon stipulation of the parties.  (Doc. No. 23.)  On November 29, 1999, the Honorable Curtis J. Joyner granted Plaintiffs' uncontested Motion for Partial Summary Judgment on Counts 1 and 6 of the Second Amended Complaint, finding that Defendant both breached Jean Anderson's contracts and wrongfully deprived her of commissions.  (Doc. No. 27.)  That same day, Judge Joyner referred this matter to Magistrate Judge Thomas J. Rueter for the exploration of settlement.  (Doc. No. 26.)  On February 9, 2000, Magistrate Judge Rueter appointed Bruce Botwin of Bederson & Company LLP ("Bederson") to audit Surety's records to determine Plaintiffs' damages.  (Doc. No. 33.)  Botwin encountered some initial difficulty gathering information from Surety.   The Court amended its order, empowering Botwin "to make any and all necessary inquiries to effect the tasks enumerated" and ordered the parties "to diligently cooperate with the expert, including without limitation, effecting the production of any and all requested documentation, documents, and information."  (Doc. No. 34.)[4]  On November 29, 2000, Magistrate Judge Rueter conducted a settlement conference with the parties, which was unsuccessful.  (Doc. No. 46.)  Shortly thereafter, Plaintiffs moved for sanctions against Defendant for failing to cooperate with Botwin's inquiry.  (Doc. No. 40.)   In response to this motion, Defendant wrote Magistrate Judge Rueter a letter, conceding that "they dropped the ball" during Botwin's investigation.  (Doc. No. 55 at Ex. D.)  Magistrate Judge Rueter denied Plaintiffs' Motion for Sanctions, but concluded

---

[4]  On August 7, 2000, while the case was in the hands of Magistrate Judge Rueter for settlement purposes, it was reassigned from Judge Joyner to this Judge.

that Surety failed to "diligently cooperate" with Botwin and ordered Defendant to pay all of plaintiffs' out-of-pocket expenses in connection with the investigation.  (Doc. No. 41.)

In October 2001, Defendant requested that Magistrate Judge Rueter terminate Botwin's appointment as an independent expert.  (Doc. No.  47.)  This request was granted with the agreement of the parties.  The parties concluded that the report of the expert was not helpful. (Doc. No. 48.)  On October 15, 2002, at the request of the parties, this matter was placed in civil suspense due to the illness of Plaintiffs' attorney.  (Doc. No. 49.)  In May 2006, Plaintiffs produced an expert report concerning Jean Anderson's economic damages from a newly identified expert.  (Doc. No. 54 ¶ 20.)  On June 21, 2006, upon request of counsel, this case was removed from the civil suspense file and placed back on this Court's active docket.  (Doc. No. 50.)  On July 11, 2006, an Order was entered scheduling a status/scheduling conference for August 24, 2006.  (Doc. No. 52.)  On September 7, 2006, the Defendant filed the instant Motion.

## II.   DISCUSSION

Defendant asks the Court to exclude the report of Plaintiffs' expert submitted in May 2006 and to preclude the expert from testifying at trial, because discovery in this matter closed on September 29, 1999.  The Third Circuit has set forth the following factors for consideration in determining whether a witness should be excluded from trial:

> [B]ad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; ability of the other party to have discovered the witnesses earlier; validity of the excuse offered by the party; willfulness of the party's failure to comply with the court's order; the parties' intent to mislead or confuse his adversary; and finally, the importance of the excluded testimony.  Underlying the cases to which we have adverted are these basic considerations:  (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad

-4-

faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904-05 (3d Cir. 1977),

*overruled on other grounds by Fitzgerald v. Larson*, 769 F.2d 160 (3d Cir. 1985) (internal

citations omitted); *see also DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02

(3d Cir. 1978).  Although Defendant would have us believe that Plaintiffs blatantly disregarded

the Court's scheduling order in this case, the record demonstrates otherwise.

In 1998, the parties undertook extensive discovery in this matter.  The discovery period

was extended three times at the request of both parties, ultimately concluding in September

1999.  It is apparent from correspondence between counsel that Defendant was less than

forthright in providing Plaintiffs with requested discovery.  During the discovery period,

Plaintiffs retained an expert to determine Plaintiffs' damages.  The efforts of Plaintiffs' expert

were hampered by the failure of Defendant to turn over requested documents.[5]  Ultimately, Judge

Joyner entered Partial Summary Judgment against Defendant on Count 1 (Breach of Contract)

and Count 6 (Wrongful Conversion of Commission) and sent the matter to Magistrate Judge

Rueter for settlement.  Because the issue of damages was so unclear, Magistrate Judge Rueter

appointed an expert to assist the Court and counsel.  Again, Defendant failed to cooperate.

Ultimately, counsel for Defendant admitted that he had dropped the ball during the discovery

period and agreed to pay all expenses incurred during the  expert's investigation.  Magistrate

Judge Rueter entered an Order directing that Defendant pay all the expenses in connection with

---

[5] In a letter dated August 26, 1999, Plaintiffs' counsel informed Defendant that they had retained an expert to determine Plaintiffs' damages in order to effectuate a settlement. (Doc. No. 55 at Ex. A. ("Surety must recognize that our accounting/actuarial expert is on board and paid for his present and reasonable prospective services.")).

the expert's investigation.

Under all of the circumstances here present and considering *Meyers*, we are compelled to conclude that Plaintiffs have not acted in bad faith.  Plaintiffs did not willfully ignore the Court's original scheduling order or in any way attempt to mislead, confuse, or surprise the Defendant. The damages recoverable by Plaintiffs in this matter have been disputed from the beginning.  It is apparent that during the course of this litigation Defendant has failed to timely provide information necessary to properly calculate damages.  Moreover, expert testimony on the issue of damages is absolutely necessary in this case.  Finally, Defendant will suffer no prejudice.  We will give Defendant the opportunity to submit an expert report in response to Plaintiffs' expert if it chooses to do so.  Accordingly, Defendant's Motion will be Denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE JEAN ANDERSON HIERARCHY          :
OF AGENTS and JEAN ANDERSON          :
                                     :          CIVIL ACTION
              v.                     :          NO. 97-CV-5175
                                     :
SURETY LIFE INSURANCE CO.            :

## **ORDER**

        AND NOW, this ___8th___ day of January, 2007 upon consideration of the Motion Of

Defendant Surety Life Insurance Company To Preclude Plaintiffs' Expert For Plaintiffs' Failure

To Comply With Scheduling Order, and Plaintiffs' response thereto, it is ORDERED that the

Motion is DENIED.  Defendant may submit an expert report in response to Plaintiffs' expert

report no more than thirty (30) days from the date of this Order.

        IT IS SO ORDERED.

                                        BY THE COURT:

                                        _____
                                        R. Barclay Surrick, Judge